118 So.2d 458

Adolph BELSOME

v.

SOUTHERN STEVEDORING, INC. and
Hartford Accident and
Indemnity Co.

No. 44760.

Feb. 15, 1960.

Rehearing Denied March 21, 1960.

Robert G. Hughes, New Orleans, for defendants-relators.

Cassibry, Jackson & Hess, Ralph N. Jackson, New Orleans, for plaintiff-respondent.

HAMLIN, Justice.

Acting under our supervisory jurisdiction (Article VII, Section XI, Louisiana Constitution of 1921, LSA) we granted certiorari to the Court of Appeal, Parish of Orleans, to review its judgment [1] affirming the judgment of the trial court dismissing a rule taken by defendants to show cause why plaintiff's workmen's compensation action should not be dismissed and why compensation benefits previously paid plaintiff should not constitute full satisfaction of his rights.

An injury suffered by plaintiff, Adolph Belsome, on March 15, 1957, during the course of his employment as a longshoreman, resulted in the amputation of the distal phalanx of his right thumb. On November 12, 1957, the trial court awarded him judgment, in solido, against his employer, Southern Stevedoring, Inc., and its insurer, Hartford Accident and Indemnity Company, in the sum of $35 per week for the period of his disability, not to exceed

1. 113 So.2d 306.

300 weeks, for temporary total disability. Among the provisions of the judgment was the following:

"* * * that at any time, six months after the rendition of this judgment, either party may apply for a modification thereof, on the grounds that incapacity of the plaintiff has been subsequently diminished or increased, all in accordance with the Louisiana Workmen's Compensation Laws."

No appeal was taken from the judgment, supra, but, during December, 1958, the defendants filed a petition for the rule herein. They alleged that "plaintiff, Adolph Belsome, is fully capable of performing duties as a longshoreman and, in fact, has performed said duties since the date of rendition of judgment herein. Defendants further aver that plaintiff has since the date of judgment herein collected compensation payments as a result of injuries received by him while working as a longshoreman, said payments being made by an employer other than Southern Stevedoring Company."

Adolph Belsome, defendant in rule, denied that there had been any change in his condition or ability to perform longshore work. He averred that during the year 1958, he had earned $1,652.49 from work he could obtain as a longshoreman not involving prolonged or heavy lifting and $829.56 as a water carrier on the docks. He further averred that he had endeavored to perform the lifting and carrying required for full-time employment as a longshoreman, but had been unable to sustain such effort because of weakness of his hand, which at that time, as well as at the time of original trial, amounted to 25% disability of the hand and 18% disability of the arm. He prayed for dismissal of the rule and for amendment of the original judgment to an award of permanent disability ($35 per week for 400 weeks). Alternatively, he prayed that the original judgment be amended to grant him compensation at the rate of 65% of the difference between his weekly wages before and after his injury for a period not in excess of 300 weeks.

In his reasons for judgment, dictated in open court at the time of dismissal of the rule, the trial judge stated:

"Ordinarily, we would take any matter of this nature under advisement. However, it is our opinion that all parties are entitled to know exactly where they stand as soon as possible in a case of this nature. Further, the issue involved here is one of fact. The Court is of the opinion that the Plaintiff is in good faith; further, that this is typified by his statement on cross-examination where he said 'You know me, I have got to make a living.' That is exactly what the claimant is attempting to do. I do not believe that there has been any change in the plaintiff's disability. I do not believe that the

Plaintiff is acclimated to the injury to his thumb. The claimant has explained the type of work that he has performed during the past year, and it is exactly what he should be doing, and this Court should not penalize him for his efforts. The Court sees no reason to change the judgment that has been previously rendered. Consequently, the Court will dismiss the rule filed by the defendants, the Southern Stevedoring Company and the Hartford Accident and Indemnity Company, and will also deny the prayer that the Plaintiff be awarded compensation for a permanent disability."

Counsel for Adolph Belsome filed a memorandum in the trial court as to the effect of a suspensive appeal from an order of the trial court refusing to modify a judgment of compensation, contending therein that a suspensive appeal could not be taken from a judgment which denied discontinuance of compensation benefits. It was argued that a suspensive appeal could only be taken from the original judgment awarding or denying compensation benefits.

Counsel for Southern Stevedoring, Inc. and its insurer filed a memorandum in answer to the above memorandum, citing therein authorities which allegedly entitled the employer and its insurer to a suspensive appeal.

A suspensive appeal was granted by the trial court, and Belsome filed a motion to dismiss the appeal as being suspensive in the Court of Appeal. The Court of Appeal denied the motion, holding that its prerogative was to review the judgment appealed from and not to determine the effect of the appeal. It stated that the court a qua had never been deemed absolutely stripped of jurisdiction to determine the character and effect of the appeal and what it was that was suspended. State ex rel. Barthet v. Houston, 37 La.Ann. 852. That court affirmed the judgment of the trial court, and the present writ was granted upon the application of Southern Stevedoring, Inc. and its insurer.

Counsel for Belsome argue in this Court that the Court of Appeal refused to consider the question of the effect of a suspensive appeal in the instant matter, and that they believe it deserves the attention of the Supreme Court in the interest of filling a hiatus in the Workmen's Compensation Law. They contend that the issue is one of considerable importance to the recipients of compensation, since a decision holding that such appeals do suspend the obligation to pay compensation would mean that employers might, by successive appeals from rules to modify compensation awards, indefinitely postpone the payment of benefits to litigants who have established their right to compensation. Counsel further stated that the instant case raised the problem of whether the application of LSA–R.S. 23:1351 and Articles 575 and 578 of the Louisiana Code

of Practice means that a suspensive appeal from an order dismissing a rule to modify a prior judgment of compensation has the effect of suspending the employer's obligation to continue compensation payments under the original judgment.

 We agree with Belsome's counsel that the question presented is one of vital interest and importance to workmen compensation claimants and to their employers and their insurers, but the Constitution does not vest us with jurisdiction to render advisory opinions. Cf. Orleans Parish School Board v. City of New Orleans, 238 La. 748, 116 So.2d 509. Any statement which we would make as to whether appellants were entitled to a suspensive or a devolutive appeal would be ineffectual. Our prerogative, therefore, is to review the judgment of the Court of Appeal.[2]

On trial of the rule, Dr. Irving Redler testified that he had examined Belsome on October 28, 1958 and found that he had been using his right hand. On direct examination he stated that he felt that sufficient time had elapsed for Belsome to become acclimated to the loss of his thumb, and was of the opinion that he was fully capable of performing the duties of a long-shoreman. On cross examination, Dr. Redler stated that at the time he originally examined Belsome before the first trial, he was of the opinion that plaintiff could work as a longshoreman but that he had found a 25% loss of use of the right hand. He then said that there was no change in the degree or evaluation of loss. No tests with the dynamometer had been made just prior to the trial of the rule. Dr. Redler stated that the only X-Ray examination he made was the original X-Ray, and that he did not feel that there was any indication to make an additional X-Ray examination. .

Mr. O. P. Villarrubia, Claim Agent and Safety Manager for T. Smith & Son, Inc., stated that Belsome had been employed by his company as a longshoreman and was injured on October 28, 1958, being paid compensation from October 29, 1958 through December 22, 1958. Mr. Villarrubia had no direct association with Belsome, and Belsome's testimony to the effect that he suffered a back injury from a boom's pushing him into the river before he was assigned duties is uncontradicted.

Belsome admitted that he had had many jobs connected with longshoremen's work between the time of the original judgment and the trial of the rule but said that he

---

**2.** The Court of Appeal correctly stated [113 So.2d 307]: "Our prerogative, as we see it, is to review the judgment appealed from and not to determine the effect of the appeal. If the suspensive appeal did not have the legal effect of suspending compensation payments due under the original judgment, *plaintiff if aggrieved by defendants' actions in withholding the compensation should have taken proper proceedings in the lower court to protect his interests.*" (Emphasis ours.)

always requested light work. He stated that he acted as water boy, "pile" man, and hook-on man. His testimony, in part, is as follows:

"Q. At the time of the original trial of this case you testified that the end of your thumb was sensitive? A. Yes, sir.

"Q. Has there been any improvement in that condition? A. It is still sensitive, but not as sensitive as it was. By bumping on something before I couldn't bear to touch anything, but since then I have been massaging it and working it the best I could.

"Q. Do you have any more hand strength now than before? A. No.

"Q. But you have been using the hand and working to the extent which you have described? A. Yes; I have to make a living."

LSA–R.S. 23:1331 provides:

"At any time six months after the rendition of a judgment of compensation, a judge of the trial court that rendered the judgment shall review the same upon the application of either party for a modification thereof, on the grounds that the incapacity of the employee has been subsequently diminished or increased, or that the judgment was obtained through error, fraud, or misrepresentation. In such cases the provisions of R.S. 23:1121 through R.S. 23:1124 with reference to medical examinations shall apply."

Wex S. Malone, in his Louisiana Workmen's Compensation, Section 281, states:

" * * * The purpose of the statute is to insure that the employee will be paid compensation during the full period of his disability and that the employer will not be required to pay for any longer than this period of disability. The usual type of compensation judgment and the revisionary procedure provided by R.S. 23:1331 are both so designed as to insure this result. The discretion vested in the court to estimate the probable duration of disability and to fix an arbitrary number of weeks is given to the court for mere administrative convenience and to avoid undue hardship on the employer in cases where it is estimated that the period of disability will not exceed six months. * * *"

On trial of the instant rule, it was incumbent upon the employer and its insurer to show that the condition of the injured employee had favorably altered from what it was at the time of the original adjudication. Wex S. Malone, Louisiana Workmen's Compensation, Section 281; Johnson v. Calcasieu Sulphate Paper Co., Inc., La.App., 142 So. 861.

Belsome's testimony, to the effect that he was incapable of performing all of the

duties of a longshoreman and that his condition had not changed since the time of the original trial, was uncontradicted.

Dr. Redler's testimony was to the effect that Belsome still had a 25% disability of his right hand.

The second injury suffered by Belsome—while working for T. Smith & Son, Inc.—was temporary. It was disassociated with his present incapacity.

■ We conclude, as did the trial judge, supra, and the Court of Appeal, that Southern Stevedoring, Inc. and its insurer have not shown any material change in the nature of Belsome's disability as it existed at the time of the original trial.

■ The fact that Belsome solicited and took work lighter than he had previously performed does not constitute a reason for disallowing him Workmen's Compensation Benefits. Cf. Weeks v. Consolidated Underwriters, La.App., 73 So.2d 479. Therapy and use of the right hand was necessary· in order that there might be the eventual acclimation spoken of by Dr. Redler.

■ We find no merit in the alternative contention of Southern Stevedoring, Inc. and its insurer (not raised by their pleadings in the lower court, but argued in brief and in application for certiorari) that they should be given credit for work performed by Belsome as a "longshoreman" [3] for employers other than Southern Stevedoring, Inc. during the interval between the original trial and the time of the filing of the petition for the rule. Cf. Pohl v. American Bridge Division United States Steel Corporation, La.App., 109 So.2d 823.

For the reasons assigned, the judgment of the Court of Appeal, Parish of Orleans, is affirmed; all costs to be paid by Southern Stevedoring, Inc. and Hartford Accident and Indemnity Co. ·

McCALEB, Justice (concurring).

It appears to me that the fundamental error in this case was the original judgment awarding plaintiff compensation not exceeding 300 weeks on the ground that he was temporarily totally disabled, when the evidence showed that he suffered the loss of the distal phalanx of the right thumb and, as a result of his injury sustained, according to the medical testimony, a 25% disability in his right hand. This loss was of a permanent nature and, as plaintiff admittedly was able to perform work as a longshoreman (he has worked over 600 hours in that capacity since the accident), compensation should have been awarded him in the first instance for the permanent partial loss of use of his right hand.

3. We find that during this interval Belsome generally performed lighter work and worked for shorter periods of time than he did before his injury.

However, defendant failed to appeal and that judgment has long since become final. In seeking a modification of the judgment, it was incumbent on defendant to show that plaintiff's disability had diminished. R.S. 23:1331. But it does not appear to me that there has been any substantial change in plaintiff's capacity to work forasmuch as the evidence taken at the first trial clearly shows that plaintiff was at that time able to work and the physicians felt that he should engage in work in order to become acclimated to the partial loss of use of his thumb.

I therefore concur in the majority ruling.