269 So.2d 824

STATE of Louisiana, Relator,

v.

James Albert BULLOCK, Respondent.

No. 52414.

Nov. 6, 1972.

Dissenting Opinion Nov. 20, 1972.

Robert Glass, New Orleans, for defendant-appellant.

William J. Guste, Jr., Atty. Gen., Harry H. Howard, Asst. Atty. Gen., Jim Garrison, Dist. Atty., Frank Klein, Louise Korns, Asst. Dist. Attys., for plaintiff-appellee.

TATE, Justice.

We granted certiorari, 261 La. 818, 261 So.2d 227 (1972), to review the action of the trial judge in setting aside, sua sponte, an order which a year earlier had granted the defendant a new trial.

The defendant Bullock was convicted of murder and sentenced to death in 1967. No appeal was taken. In 1971, the Criminal District Court, in which he had been tried, granted the defendant's writ of habeas corpus and ordered a new trial for him, thus setting aside both the conviction (verdict) and the sentence. The State did

not seek supervisory review of this action or otherwise attempt to stay the finality of the ruling.

The basis for this 1971 ruling was the decision of the United States Supreme Court in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). There, the Supreme Court had invalidated a death penalty, but not the conviction itself, because of the exclusion of prospective jurors with general scruples against capital punishment. See also State v. Turner, 253 La. 763, 220 So.2d 67 (1969).

Pursuant to a previous fixing, the present case came up for the new trial a year later, in 1972. The defendant's court-appointed counsel moved for a continuance. He noted the recent decisions of this court [1] which indicated that the proper disposition, where a capital penalty was imposed pre-*Witherspoon* by a jury chosen in violation of *Witherspoon* standards, was to impose a life sentence instead of to grant a new trial. The defense counsel did not move to set aside the order for a new trial; only for a continuance.

However, the trial judge then, sua sponte, set aside the previously granted order for a new trial and sentenced the defendant to life imprisonment.

We granted certiorari upon application of the State; but the defendant's court-appointed counsel likewise objected to the action of the trial court, for the reason that the defendant himself desired a new trial, as well as the State.

Both parties correctly contend that the trial court was without authority to rescind, over objection, the order which had granted a new trial and which had set aside the previous conviction and sentence. In the absence of timely application for supervisory review staying such ruling, it became final and was no longer subject to revision or reversal by the trial court which had rendered it. State v. Rideau, 262 La. 460, 263 So.2d 724 (1972); cf. State v. Spina, 261 La. 397, 259 So.2d 891 (1972) and Ex Parte Twombly, 265 Mich. 422, 251 N.W. 538 (1933). Since not only the sentence but also the verdict was set aside by the now-final order granting the new trial, the trial court was without authority to impose a life sentence; for, to be valid, a sentence must rest upon, inter alia, a valid and sufficient verdict or plea of guilty, La.C.Cr.P. Art. 872(3).

The State notes that it desires a new trial with the purpose of attempting to secure a more stringent life sentence, in accordance with the provisions of the amendment to Louisiana Code of Criminal Procedure Article 817 by Act 502 of 1972, effective July 26, 1972. The effect of the 1972 amendment is to permit a jury to recom-

1. State v. Shaffer, 260 La. 605, 257 So.2d 121 (1971) and State v. Duplessis, 260 La. 644, 257 So.2d 135 (1971).

mend not only the previous sentence of life imprisonment, but in addition that such life imprisonment be without "benefit of parole, probation, commutation or suspension of the sentence." [2]

■ In order to prevent error upon the remand, we must note that, to attempt to apply this penalty provided by the 1972 law to those offenses committed prior thereto, would offend the provisions of our state and federal constitutions forbidding the enactment of ex-post facto laws. U.S.Const., Art. I, Section 8; La.Const. of 1921, Art. 4, Section 14.

■ Under long established principle, the prohibition against ex post facto laws includes not only those laws which make acts criminal though done before the enactment made them unlawful, but also it prohibits the enforcement of any enactment which changes the punishment so as to inflict a greater punishment than that authorized for the crime when committed. See: Calder v. Bull, 3 U.S. (3 Dall.) 386, 1 L. Ed. 648 (1798), and the similar interpretation uniformly given by later jurisprudence; 1 Antieau, Modern Constitutional Law § 5:133 (1969). "The Constitution

2. The italicized clause (2) was added to Article 817 by the 1972 act:
   ·· "In a capital case the jury may qualify · its verdict of guilty as follows:
   "(1) With the addition of the words 'without capital punishment', in which case the punishment shall be imprisonment at hard labor for life, or

forbids the application of any new punitive measure to a crime already consummated, to the detriment or material disadvantage of the wrongdoer." Lindsey v. State of Washington, 301 U.S. 397, 401, 57 S.Ct. 797, 799, 81 L.Ed. 1182 (1937).

Thus, this court has held that a subsequent enactment which abolished a prior right of parole was null as an ex post facto enactment insofar as applied to persons convicted for offenses committed prior to it. State ex rel. Woodward v. Board of Parole, 155 La. 699, 99 So. 534 (1924). See also, e.g., Lindsey v. State of Washington, 301 U.S. 397, 57 S.Ct. 797, 81 L.Ed. 1182 (1934) and In Re Medley, 134 U.S. 160, 10 S.Ct. 384, 33 L.Ed. 835 (1890).

If this same prosecution for a 1966 offense had been remanded or retried prior to enactment of the 1972 act, the defendant had available, if he received a life sentence, the same right to apply for commutation or parole then applicable to all life sentences. · The ex post facto prohibitions of our state and federal constitutions forbid applying the 1972 act to offenses committed prior thereto so as to permit the imposition of life sentences subject to more stringent conditions. Thus, in Lindsey v.

"(2) *With the addition of the words* '*without capital punishment or benefit of parole, probation, commutation, or suspension of sentence*', *in which case the punishment shall be imprisonment at hard labor for life without benefit of parole, probation, commutation or suspension of sentence.*"

State of Washington, 301 U.S. 397, 57 S. Ct. 797, 81 L.Ed. 1182 (1937), the United States Supreme Court invalidated a state statute, as ex post facto legislation, which had the effect of making the standard of punishment "more onerous", 301 U.S. 400, 57 S.Ct. 798, through its effect on, inter alia, parole and release eligibility.

For the reasons assigned, therefore, the sentence imposed by the trial court is annulled and vacated, and this case is remanded to the Criminal District Court for the Parish of Orleans, Section "H", for a new trial, in accordance with law.

Remanded.

HAMLIN, J., dissents, being of the opinion that the ruling of the trial judge is correct.

SANDERS, J., concurs in the result only.

McCALEB, Chief Justice (concurring in part and dissenting in part).

I subscribe to the main holding herein which annuls and vacates the action of the district judge in sentencing Bullock at this time to life imprisonment. For, although originally the judge, in compliance with the Witherspoon case (391 U.S. 510, 88 S. Ct. 1770, 20 L.Ed.2d 776) should have imposed a life sentence on Bullock, under State v. Turner, 253 La. 763, 220 So.2d 67,

and the cases following that decision, as the application was for habeas corpus, the fact that he erroneously granted a new trial and set aside the verdict of guilty precludes the judge, as pointed out in the majority opinion, from thereafter imposing a sentence when there was no verdict of guilty on which such sentence could rest.

On the other hand, I strongly demur from the action of the Court in giving an advisory opinion to the judge in which it anticipates error will be committed on the remand and declares that Article 817 of the Code of Criminal Procedure, as amended by Act 502 of 1972, cannot be constitutionally applied to the defendant Bullock as in his case it is an ex post facto law. I make no comment whatever as to the decision of this Court on the applicability of the 1972 amendment because the matter is not before us at this time. It will be proper only to consider the effect of that statute if or when such a question is presented to us on appeal from an adverse ruling of the district court.

It is well settled by this Court that it is impermissible for it to give an advisory opinion to a district court as to how the judge should dispose of a particular question of law should it come before him and, particularly, in matters concerning the constitutionality of statutes. State ex rel. Day et al. v. Rapides Parish School Board, 158 La. 251, 103 So. 757; Graham et al., v.

Jones et al., 198 La. 507, 3 So.2d 761; State v. Fant, 216 La. 58, 43 So.2d 217; Belsome v. Southern Stevedoring, Inc., 239 La. 413, 118 So.2d 458; Aucoin v. Dunn, 255 La. 823, 233 So.2d 530; Tafaro's Investment Co. v. Division of Housing Improvement, 261 La. 183, 259 So.2d 57.

In disregarding this firmly established rule of law, the majority has usurped the constitutional right of the district court to pass on questions coming before it at the trial level and has actually assumed original jurisdiction in a criminal case contrary to Section 10 of Article VII of our Constitution.

SUMMERS, Justice (dissenting).

I agree that the trial judge was without authority to set aside his order granting a new trial. I do believe, however, that this court under its supervisory powers could properly set aside the trial court order granting a new trial. In doing so, we might then remand the case for resentencing.

I wish to also observe that the minority opinion of this court can have no effect insofar as it purports to instruct the trial judge in the forthcoming sentencing procedure. It is an improper and gratuitous effort to deprive the trial judge of his prerogative to pass upon the constitutionality of the sentencing statute in the first instance.